CASE NO. 19-10163

CASE NO. 19-10250

IN THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

***

UNITED STATES OF AMERICA,

        Plaintiff/Appellee,

v.

LONNY DITIRRO,

        Defendant/Appellant.

D.C. No. 2:16-cr-00216-KJD-VCF

(Nevada, Las Vegas)

Appeal from the United States District Court
for the District of Nevada

**OPENING BRIEF OF
APPELLANT LONNY DITIRRO**

DANIEL HILL
HILL FIRM PLLC
228 S. 4th Street, 3rd Floor
Las Vegas, Nevada 89101
(702) 848-5000
dan@hillfirmlawyers.com

Counsel for Appellant Lonny Ditirro

# TABLE OF CONTENTS

Jurisdictional Statement ...................................................................... 1

Detention Status .................................................................................. 1

Issues Presented for Review ............................................................... 1

Statement of the Case ......................................................................... 2

    I.   SUPPRESSION HEARING ................................................ 2

        A.  Search of the SD card ........................................... 2

        B.  Interrogation of Ditirro................................................ 6

        C.  District court order and trial ........................................ 7

Summary of Argument ........................................................................ 8

Argument ........................................................................................... 10

    I.  Standard or review ..................................................... 10

    II.  The lower court erred when it denied Ditirro's Motion to Suppress the material found on the SD card because the search was conducted illegally. ........................................................................... 10

        A.  The initial search of the SD Card was illegal because Ditirro never consented to the search. ................................................ 10

        B.  Alternatively, the police exceeded the scope of any private search. ....................................................................... 12

        C.  The affidavit for the search warrant was tainted because probable cause was determined from the initial illegal search of the SD Card. ........................................ 13

    III.  The lower court erred when it denied the Motion to Suppress Ditirro's statements because they were obtained during an illegal interrogation. ................................................ 14

Conclusion ......................................................................................... 16

Statement of Related Cases ............................................................... 16

Certificate of Compliance ................................................................. 17

i

## Table of Authorities

### Cases Page(s)

*Edwards v. Ariz.*, 451 U.S. 477 (1981) ...................................................................15

*Fare v. Michael C.*, 442 U.S. 707 (1979) ............................................................. 14

*Johnson v. United States*, 333 U.S. 10 (1948) ....................................................... 13

*Miranda v. Ariz.*, 384 U.S. 436 (1966) ....................................................................9

*R.I. v. Innis*, 446 U.S. 291 (1980) ..........................................................................14

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ................................................ 10

*United States v. Driver*, 776 F.2d 807 (9th Cir. 1985) ......................................... 13

*United States v. Evans*, 786 F.3d 779 (9th Cir. 2015) .......................................... 10

*United States v. Jacobsen*, 466 U.S. 109 (1984) ............................................. 10, 12

*United States v. Rothman*, 492 F.2d 1260 (9th Cir. 1973) .................................... 11

*United States v. Tosti*, 733 U.S. 816 (9th Cir. 2013) ............................................ 12

*United States v. Vasey*, 834 F.2d 782 (9th Cir. 1987) .......................................... 13

*Walter v. United States*, 447 U.S. 649 (1980)....................................................10, 11

*Wong Sun v. United States*, 371 U.S. 471 (1963) ............................................10, 13

### Federal Statutes

18 U.S.C. § 2251(a) and (e) ..................................................................................... 1

18 U.S.C. § 2252A(a)(5)(B) ..................................................................................... 1

28 U.S.C. § 1291 ........................................................................................... *passim*

### Rules

Fed. R. App. P. 32(a)(5) ......................................................................................... 16

Fed. R. App. P. 32(a)(6) ......................................................................................... 16

Fed. R. App. P. 32(a)(7)(B) .................................................................................... 16

Fed. R. App. P. 32(f) .............................................................................................. 16

### Other

U.S. Const. amend. IV ........................................................................................ 8, 10

U.S. Const. amend. V .............................................................................................. 9

## JURISDICTIONAL STATEMENT

This direct appeal follows a guilty verdict after jury trial on four counts of sexual exploitation of children under 18 U.S.C. § 2251(a) and (e) and one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).  On July 24, 2019, the district court sentenced Mr. Ditirro to 140 years in prison followed by lifetime supervision.  I EOR at 201.  Appellant filed a timely notice of appeal on July 24, 2019.  I EOR at 213.  This Court has jurisdiction under 28 U.S.C. § 1291.

## DETENTION STATUS

Appellant is in federal custody at Tucson USP, and his expected release date is October 5, 2135.

## ISSUES PRESENTED FOR REVIEW

I.    Did the government violate Fourth Amendment search and seizure protections by searching Ditirro's SD card without a warrant and using the results of that search to obtain a warrant months later?

II.   Did the government violate Ditirro's right to counsel by interrogating him with no attorney present when Ditirro had an attorney in state court proceedings regarding the same factual allegations?

1

## STATEMENT OF THE CASE

This case came to be because Mr. Ditirro's ex-girlfriend, Rachael Ismail, found Ditirro's SD card after he moved out. She put it in her phone and saw what she thought was an image of child pornography. She told a friend about it and gave him the SD card. That friend called the police, who arrived on scene and searched the SD card with no warrant. Months later LVMPD detectives obtained a search warrant and conducted a forensic extraction of the SD card's media to include child pornography. Based upon that extraction, detectives located a few victims. Ditirro was then charged, arrested, and interrogated. Before trial, Ditirro moved the district court to suppress the fruits of the search of the SD card and of Ditirro's incriminating statements during interrogation. The district court largely denied the motion, and Ditirro was convicted at jury trial on all counts.

## I. SUPPRESSION HEARING

### A. Search of the SD card

Ismail[1] testified at the suppression hearing that she dated Ditirro for approximately four months from March through July of 2015. I EOR at 12. Ditirro moved in with Ismail sometime in May of 2015. *Id.* at 13. They broke up in July of 2015, at which time Ditirro moved out. *Id.* Around the third week of August 2015, Ismail estimated, she discovered an SD card stuck to her leg upon awakening. *Id.* at 15. Ismail surmised it must be Ditirro's and out of curiosity inserted the SD card into her phone and perused its contents. *Id.* at 19. Ismail testified that she opened a "restricted" file and saw "the first" picture, which "looked" like "a child and a man."

---

[1] Rachael Ismail is also known throughout the proceedings by her maiden name, Rachael Saito.

*Id.* at 22. Ismail didn't look at anything else. *Id.* at 34. After seeing that picture, Ismail removed the SD card from her phone. *Id.* at 23.

The next day, Ismail brought the SD card to her friend Stephen Torrez's[2] house and explained what she "believed" she saw. *Id.* at 24. She went to get a drink, and when she returned Torrez had called the police to his residence. *Id.* at 25. Although the police talked to her about what she observed on the card, Ismail "wasn't going to go through [the card] with them." *Id.* at 26. In fact, the police had already reviewed the SD card before Ismail talked to them about what she saw. *Id.* at 35. Police seized the SD card on that day (which was actually September 10, 2015). *Id.* at 63.

LVMPD Officer Bianco was one of the first responding officers on September 10, 2015. *Id.* at 76. Upon arrival, Bianco testified at the suppression hearing, he obtained background information from Torrez and Torrez's wife. *Id.* at 78. Specifically, Bianco learned that Ismail told Torrez that the SD card she handed over was her ex-boyfriend's (Ditirro) and might contain child pornography. *Id.* Then, Bianco instructed Torrez to put the SD card in Torrez's phone and Bianco and his FTO, Officer Wilson, scrolled through "countless" photographs. *Id.* at 79. Only after that did Bianco and Wilson speak to Ismail. *Id.* at 80. Bianco testified he searched the SD card because he "can't take just [people's] word for it." *Id.* Because of the unreliability of the initial report from Torrez, Bianco testified, he "had to look in"

---

[2] Stephen Torrez is also known throughout the proceedings as Stephen Baltazar

the SD card. *Id*. Bianco also testified he searched the SD card because he wasn't sure "if there was evidence of a crime" because "people also make false allegations." *Id.* at 87. He testified he looked at "roughly 30 to 40 pictures" during his warrantless search. *Id.* at 81.

Officer Wilson also testified at the suppression hearing. He echoed Bianco by testifying that when the officers arrived, Torrez explained that Ismail told him the SD card appeared to have child pornography and then the officers instructed him to display the media on his phone. *Id*. at 99. Only after that did the officers speak to Ismail. *Id*. Officer Wilson testified that patrol officers like him can apply for search warrants from the field by phone, and that he has done so before. *Id*. at 105.

Torrez testified at the suppression hearing. Notably, Torrez testified that one of the officers put the SD card in the officer's phone to search it, as opposed to Torrez's phone. *Id.* at 162. In any event, with no warrant, the officers seized the SD card that day, September 10, 2015. *Id.* at 29.

At some point after September 10, 2015, Det. Tooley with the Las Vegas Metro Police was assigned to the case. *Id.* at 49. Months later in November or December 2015 Det. Tooley had a telephone call with Ismail. On that call, Ismail told Det. Tooley she "believed" the child or children she saw were around 12, "but she wasn't quite sure." *Id.* at 51.

Det. Tooley testified at the suppression hearing that she has specialized training in discerning minors from adults in a pornographic context, and that

4

sometimes that is a difficult task. *Id.* at 62. She went on to testify that it would be even more difficult without that specialized training. *Id.* She testified that if she were going to arrest someone for child pornography, she "would want more information than a layperson telling [her] that [an] SD card appears to have child pornography on it." *Id.* at 63.

Finally, on December 2, 2015, Det. Tooley applied for a search warrant for the SD card. *Id.* at 64. The particularized recitation of probable cause was 8 paragraphs. *Id.*at 68. The relevant portion thereof recited:

> On September 10, 2015, LVMPD Officers N. Bianco…and G. Wilson…were dispatched to [REDACTED] reference a child exploitation call. Upon arrival, officers made contact with the person reporting (PR), Stephan Baltazar…and his wife Tiffany Gonyea[.] Per Baltazar, his friend, Rachael Saito…found a micro secure digital (SD) card in her bed. Per Saito, the SD card belongs to her ex-boyfriend, Lonny Joseph Ditirro[.] Baltazar described Saito put the SD card in her phone and discovered what appeared to be child pornographic images on the SD card. Saito, in fear Ditirro would retaliate against her if she went to the police, provided the card to Baltazar
>
> Officers, using Baltazar's cell phone viewed the SD card. Officers observed several images of females, who appeared to be under the age of 16, engaged in sexual acts.
>
> Saito arrived while officers were still on scene and stated one of the females on the SD card who appears to be under 16, goes by the name of [REDACTED] and per Ditirro's Facebook page, graduates in 2017. Per Saito, Ditirro drove to Texas to meet with [REDACTED]. Also, Saito described seeing an image of a child who appeared to 5 years old engaged in sexual acts with an adult male.
>
> […]

5

On November 30, 2015, Detective Tooley conducted a recorded interview with Saito. Saito described her and Ditirro had begun dating in February of this year. Shortly thereafter, Ditirro moved in to her apartment at [REDACTED] Nevada. Saito described she had discovered Ditirro had been chatting on Facebook with a 15 year girl named [REDACTED] from Wichita, Texas.

Saito described she and Ditirro broke up around July, but began a causal relationship in August; however, are no longer together. Daito [*sic*] described, in August, Ditirro told her he was going to visit his mother who lives in El Paso, Texas, but Saito believes Ditirro met up with [REDACTED].

Saito described on or about September 9, 2015, while in bed, she discovered a micro SD card stuck to her leg. Saito believed it to be Ditirro's SD card because he had asked if she had seen the card. Saito described she placed the SD card in her phone and observed both clothed and nude pictures of Ditirro, images of Ditirro engaged in sexual acts with a child she believes is [REDACTED]. Also, Saito located images of other children who appear to be under the age of 16 engaged in sexual acts. Specifically, Saito described an image of a female child around the age of 12 engaged in sexual intercourse with an adult male.

*Id.* at 217-18. A Las Vegas justice of the peace issued a search warrant that same day. *Id.* at 223. Det. Tooley requested that forensics do a full extraction of the SD card, and then the case was reassigned to a Detective Miller. *Id.* at 53. The identification of the victims who testified at trial was a result of the search of the SD card. *Id.* at 110.

## B.    Interrogation of Ditirro

Toward the end of May 2016, Ditirro was charged in Nevada state court, where he retained a lawyer and was released pending trial.  I EOR at 113. Shortly thereafter, state and federal authorities discussed the case and the government filed

the complaint that gave rise to this case. *Id.* Later the state charges were dismissed. *Id.* FBI Agent Flaherty arrested Ditirro on the federal charges at his residence at 7 o'clock in the morning on June 17, 2016. *Id.* at 114.

Agent Flaherty interrogated Ditirro that morning and testified at the suppression hearing. *Id.* at 122. Agent Flaherty testified that during interrogation Ditirro stated he "had an attorney" for the same allegations in the state proceedings. *Id.* But Agent Flaherty continued to interrogate Ditirro. *Id.* at 123. Ditirro then expressed his desire to have an attorney present for "several" minutes, but Agent Flaherty testified he didn't request an attorney "in those words." *Id.*at 122-23. During the interrogation, Agent Flaherty asked, "You want to talk to your attorney?" II EOR at 267. Ditirro responded, "I guess that would be good." *Id*. Agent Flaherty testified that before interrogating Ditirro on June 17, 2016, she would have been aware that Ditirro was represented by counsel regarding the same allegations in Nevada state court. I EOR at 134.

### C.    District court order and trial

The magistrate judge recommended granting the motion to suppress in part. The magistrate judge reasoned that any photographs viewed by either Ismail or Torres would be admissible because they were private searchers. *Id.* at 189. The magistrate judge found that the police may have exceeded the scope of the private search *Id.* at 186. Still, the magistrate judge found that the warrant was properly supported by probable cause. *Id.* at 190. But the magistrate judge suppressed any testimony by officers of images they saw on September 10, 2015 during the initial search of the SD card. *Id.* at 188. The magistrate judge denied suppressing any of Ditirro's statement finding that the waiver of *Miranda* was knowing and voluntary

and that Ditirro "did not raise the issue of violation of his…sixth amendment right to counsel in his motion." *Id.* at 195. Ditirro contends now that he did raise that issue in the district court. *See. e.g., id.* at 133-35. The district court affirmed the magistrate judge's recommendation. *Id.* at 199.

Ditirro proceeded to trial October 15-17, 2018. Dozens of incriminating photographs recovered from the SD card during forensic analysis were introduced by the government. The incriminating portions of Ditirro's statement were also introduced.

## SUMMARY OF ARGUMENT

The Fourth Amendment protects all persons against warrantless searches and seizures. U.S. Const. amend. IV. Evidence acquired from unconstitutionally obtained information is inadmissible. The initial search of the SD card was unconstitutional, therefore the fruits of that search that led to a search warrant, are also unconstitutional.

A warrantless search can be justified if valid consent was given to allow the search, however, no consent was given in this case. Alternatively, the police greatly exceeded the scope of any private search completed by Ismail or Torrez. Accordingly, the "30 to 40" photos Bianco viewed on the SD card, that became the basis of probable cause in the affidavit for a search warrant, were tainted and should have been excised. I EOR at 81. Without the tainted material, no probable cause existed to grant a search warrant.

8

The Fifth Amendment protects all persons from being compelled to be a witness against himself. U.S. Const. amend. V. Further, *Miranda* safeguards require a police interrogation to cease once a defendant has invoked their right to an attorney. *Miranda v. Ariz.*, 384 U.S. 436 (1966). The hour-long interrogation of Mr. Ditirro was unconstitutional.

Ditirro did not waive his right to an attorney simply because he continued to answer questions after requesting counsel during the police's interrogation. Throughout his interrogation, Ditirro stated multiple times that he had an attorney and would like to speak to them – the interrogation did not cease after any of these requests.

This Court should vacate the judgment of conviction and remand this case because there was nothing to warrant the violation of Mr. Ditirro's Fourth and Fifth Amendment rights.

## ARGUMENT

### I.  Standard or review

This Court reviewed *de novo* the district court's ruling on a motion to suppress and for clear error the district court's underlying findings of fact. *See United States v. Evans*, 786 F.3d 779, 784 (9th Cir. 2015)

### II.  The lower court erred when it denied Ditirro's Motion to Suppress the material found on the SD card because the search was conducted illegally.

All evidence recovered from the SD card should be suppressed as fruit of the poisonous tree because an initial illegal warrantless search of the SD card became the basis of the subsequent search warrant for the SD card. The Fourth Amendment protects all persons against unreasonable searches and seizures whenever the person has a reasonable expectation of privacy and no warrant shall allow the search of the private area without probable cause. U.S. Const. amend. IV. Valid consent is a constitutionally permissible exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). The government may not exceed the scope of a private search unless they have the right to make an independent search. *United States v. Jacobsen*, 466 U.S. 109, 116 (1984) (citing *Walter v. United States*, 447 U.S. 649, 654 (1980)). All evidence seized during the illegal warrantless search was tainted and should not have been included in the affidavit for a search warrant. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).

### A.  The initial search of the SD Card was illegal because Ditirro never consented to the search.

The fact that law enforcement is legally in possession of a package, does not give them authority to search the contents of the package. *Walter*, 447 U.S. at 654.

One of the only instances in which a search may be conducted without a warrant, is if the person with privacy rights gives voluntary consent to a search. *Schneckloth*, 412 U.S. 227; *Chimel v. Cal.*, 395 U.S. 752, 763 (1969). When items are seized without a warrant, it is the Government's burden to prove consent was given to justify the search. *United States v. Rothman*, 492 F.2d 1260, 1263 (9th Cir. 1973).

Under the Supreme Court's ruling in *Walter v. United States*, Ditirro retained a privacy interest in the SD Card even though it was not physically in his possession. *Walter*, 447 U.S. at 654. In *Walter*, the recipient of misdirected mail contacted the FBI after opening the packages and discovering cartons filled with materials suggestive of sexually explicit films. *Id.* at 651-652. Subsequently, without a warrant, the FBI extracted and viewed the films. *Id.* at 652. The Court held that the fact that the cartons were unexpectedly opened by a third party does not alter the sender's legitimate expectation of privacy. *Id.* at 659. Additionally, the FBI was not excused from obtaining a search warrant just because the boxes had previously been opened by a private party. *Id.* at 656. "An officer's authority to possess a package is distinct from his authority to search it." *Id.* at 654.

Here, Mr. Ditirro had a legitimate expectation of privacy in the content of the SD card. That right was not extinguished when he lost his card, just as the *Walter* sender retained an expectation of privacy when the shipment was misdirected. The fact that the officers were in lawful possession of the SD card, to the extent that Mr. Torrez gave it to them, did not give them the authority to search it. Moreover, Ditirro was not present when the police responded to Mr. Torrez's call and never gave consent to the warrantless search of his private property. Officers Wilson and Bianco could have applied for a telephonic search warrant, as Wilson has done before, but

11

failed to do so. I EOR at 105. The police's subsequent search of the SD Card was an unreasonable violation of Ditirro's constitutional rights.

### B. Alternatively, the police exceeded the scope of any private search.

If the Government attempts to circumvent the Fourth Amendment by arguing that the searches were first completed by private citizens, this argument still fails. Even if searches by private parties do not violate the Fourth Amendment, "the Government may not exceed the scope of the private search." *Jacobsen*, 466 U.S. at 116. (finding that testing the white substance that had spilled out of its packaging was not exceeding the private search that had been done). The Fourth Amendment is implicated only if government authorities search materials in which the expectation of privacy has not already been frustrated. *United States v. Tosti*, 733 U.S. 816, 821 (9th Cir. 2013).

The present case can be distinguished from *Tosti* for at least two reasons. First, the appellant in *Tosti* voluntarily gave his computer to a tech company with the understanding that the employees would inspect the system in furtherance of its repair. *Id*. at 823. Here, to the contrary, Mr. Ditirro did not voluntarily hand over his SD card and was reported to be searching for his missing property. I EOR 217-218. Ditirro never expected for anyone to be looking through his private property. Second, in *Tosti*, the responding officers only looked through the materials the computer tech had previously viewed. *Tosti*, 733 U.S. at 822. Conversely, in the present case, Officer Bianco testified to viewing "roughly 30 to 40 photos" even though Torrez only looked at enough photos to know to contact the authorities. I EOR at 81; *See* Evidentiary Hearing.

Officers Bianco and Wilson violated Ditirro's Constitutional right to privacy when they greatly exceeded the scope of the search conducted by Torrez. The lower court correctly suppressed any statements or testimony regarding what the officers viewed on the SD card during this search, however, the evidence should have also been deemed tainted for the subsequent search warrant.

**C.    The affidavit for the search warrant was tainted because probable cause was determined from the initial illegal search of the SD Card.**

Probable cause for a search and seizure cannot be determined during the search, it must exist prior to the search and seizure. *Johnson v. United States*, 333 U.S. 10 (1948) (holding that probable cause to search a hotel room needed to exist before the actual search was conducted instead of justifying the search with the materials found during the search). Any evidence obtained during an illegal warrantless search is tainted and should not be included in an affidavit for a search warrant. *Wong Sun*, 371 U.S. at 471 (suppressing all declarations made during a warrantless search). The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant. *United States v. Driver*, 776 F.2d 807 (9th Cir. 1985). A reviewing court should excise the tainted evidence from the affidavit and determine whether probable cause existed from the remaining evidence. *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987) (finding that once reference to materials obtained during a warrantless search were excised from the affidavit, the remaining facts would not establish probable cause to issue a search warrant).

The untainted facts in the affidavit are insufficient to establish probable cause for the issuance of a warrant. With the tainted materials excised, the remaining facts

include statements from Torrez and Ismail who "believed" to have seen photos of child porn. I EOR at 51. However, Det. Tooley testified about how difficult it is to discern children from adults in a pornographic context. *Id*. at 62. And further testified that if she were going to arrest someone for child pornography, she "would want more information than a layperson telling [her] that [an] SD card appears to have child pornography on it." *Id.* at 63. Based on the detective's testimony, Torrez and Ismail's statements are not credible enough to determine probable cause for a search warrant.

The search warrant issued in this case was tainted because probable cause was determined from illegally obtained materials from the SD card. Therefore, all materials uncovered during the subsequent search of the SD card should have been suppressed.

## III. The lower court erred when it denied the Motion to Suppress Ditirro's statements because they were obtained during an illegal interrogation.

Detective Miller and Agent Flaherty obtained statements from Ditirro in violation of his Fifth Amendment and *Miranda* rights and thus, those statements should be suppressed. *Miranda* safeguards come into play whenever a person in custody is subject to express questioning or its equivalent. *R.I. v. Innis*, 446 U.S. 291, 300 (1980). *Miranda* safeguards were designed to give a suspect in custody an added measure of protection against coercive police practices. *Id.* at 301. *Miranda* represents "the rigid rule than an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." *Fare v. Michael C.*, 442 U.S. 707, 719 (1979) (finding that an interrogation did not need to cease when the defendant asked for his probation officer because a probation

officer does not fill the unique role of an attorney in the adversary system of criminal justice).

When an accused has invoked their right to have counsel present during an interrogation, a waiver of that right cannot be shown simply because the accused responded to further police-initiated interrogation even if he has been advised of his rights. *Edwards v. Ariz.*, 451 U.S. 477, 484 (1981) (finding that statements made during a January 20th interrogation were inadmissible because the defendant had invoked his right to an attorney on the 19th and had not yet met with counsel). At the FBI office, there was a recorded interrogation of Mr. Ditirro that lasted over an hour. *See* Exhibit J. During the interrogation, Ditirro made multiple statements about having an attorney from his state court case and wanting to talk to that attorney. I EOR at 122-123. Agent Flaherty even testified that before the interrogation even began, she would have known that Ditirro had an attorney from his state court case. *Id*. at 134. However, the questioning of Mr. Ditirro still did not stop. By continuing to answer questions, Ditirro did not waive his right to an attorney. *See Edwards*, 451 at 484. In fact, by repeatedly asking to speak to his attorney, Mr. Ditirro made it plainly evident that he felt it was important to have counsel present.

The police interrogating Ditirro blatantly ignored his repeated requests to speak to his attorney. This conduct was in violation of *Miranda* and the Fifth Amendment to the Constitution. Consequently, Mr. Ditirro's statements should have been suppressed.

## CONCLUSION

The Fourth and Fifth Amendments were written to give individuals a right to privacy and a right against self-incrimination. There is nothing in the present case to justify the multiple violations of Lonny Ditirro's Constitutional rights. All materials obtained from the SD card are fruit of the poisonous tree and should have been suppressed. Additionally, the interrogation of Ditirro should have been suppressed because it was held in violation of his constitutional right to an attorney. Accordingly, Appellant requests that the Court vacate the judgment of conviction and remand this case.

## STATEMENT OF RELATED CASES

The undersigned are unaware of any related cases.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,142 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman 14-point font.

Dated this 22nd day of June 2020.

Respectfully submitted,

*/s/ Daniel Hill*
DANIEL HILL
Counsel for Appellant

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of June 2020, a true and correct copy of **APPELLANT'S OPENING BRIEF** was served via the United States Court of Appeals for the Ninth Circuit CM/ECF system on all parties or persons requiring service.


*/s/ Daniel Hill*
DANIEL HILL
of HILL FIRM PLLC

18